May I please record Nolan Knight here on behalf of the Appellants EFLO Energy and Pacific LNG, whom I collectively will refer to as EFLO for purposes of my presentation this morning. And I briefly note that contrary to any contrary preferences from the court, I intend to reserve four minutes for purposes of rebuttal. EFLO respectfully requests that this court reverse the erroneous summary judgment disposition by the lower court in favor of Devon Energy. The principal rationale of the lower court was that Devon Energy, on behalf of Devon Canada, made a proper request to draw on a letter of credit. The flaw with the lower court's reasoning, and frankly with the presentation I fully anticipate you're going to hear from Devon Energy's counsel this morning, is that there are two co-equally important preconditions to a proper draw on the letter of credit. Whereas the lower court's analysis and Devon Energy's sole emphasis has been on one of the two conditions. The two conditions are that Devon Canada had to have experienced a loss, as that term is defined in the closing agreement and the purchase agreement. And isn't that a problem for you? Because it's so broadly defined. Loss. I don't think it is, Your Honor, because of the second condition. It can just be a claim. That is true, but the second condition is that Devon Canada had to have some basis to claim indemnity. So it is not a The letter of credit is not written. Wasn't there a demand made on Devon Canada? There was. However, there was no some certain liquidated actual quantified. Well, but again, we're getting into the weeds of the definition of loss, and that includes both demand and claim. I agree, Your Honor. And again, that's why I think the indemnity piece is so critical. Section 2.2 of the closing agreement talks in terms of Devon Canada's entitlement to draw on the letter of credit. And that entitlement is not triggered by a loss in the abstract or vacuum. It is triggered by Devon Canada or Devon Energy acting on behalf of Devon Canada's ability to request indemnification. Section 2.2 of the closing agreement also incorporates, by reference, section 3.2 of the closing agreement, which establishes the conditions for EFLO's liability and talks in terms of liability in the terms of indemnity. But in addition to the condition a, quote, unquote, proper draw demand. And wasn't it proper? It was timely? Anything that they had to do, they did. Did they not? Where did they fall down? They did not have a basis to request indemnification. So we're back to square one. It's not a loss. It's not a demand. It's not anything. The way that I would characterize it is that it could be a loss. It could be a demand. But in the absence of a basis to request indemnification pursuant to 2.2, 3.2, and even the certification requirement in the letter of credit, it is not a proper request to draw on the letter of credit. Okay. What provision exactly are you pointing to to suggest that essentially you're talking about the word indemnification and you're suggesting that indemnification isn't appropriate here because there isn't a final determination of liability, correct?  And yet the contract that you agreed to says that there's indemnification for a loss with a capital L as defined in the agreement. Loss is a defined term, and loss includes claims and demands. And so I'm struggling to see where you're... Because the term... Where indemnification is a problem. Indemnification for a loss, and you have a loss. Correct. Loss is a defined term, but the term indemnity also has a commonly accepted plain and, dare I say, legal meaning. And indemnification under both Oklahoma and Canadian law is the same in both jurisdictions. Indemnification means you are reimbursing someone either for some out-of-pocket expense or, at minimum, some quantifiable loss. Right. Exactly so. And in this case, the loss is a defined loss under the contract. There was... How do you get past that? There was not... It may be that generally this is how the world operates, but we have a contract here. I agree, Your Honor, but here there was no quantifiable loss incurred by Devin Canada or even any sum certain that Devin Canada was going to incur. There is nothing in the record that establishes that the original request for a contribution from Paramount, which ultimately translated into a civil charging document referred to as a statement of claim, liquidated, quantified, or even had the legal effect of actually imposing upon Devin Canada any obligation. This was a purely... Well, they already said they had expended, what, $13 million and that they still weren't done, and please help us because you're in this mess with us. I mean, it's a classic CERCLA situation, sounds like. That was Paramount's position. Right. But much like the classic CERCLA situation, it's a very complex, intricate analysis to actually attribute a sum certain to someone who has been directed to contribute in those contexts. And the same is the case here. Even at the time that Paramount filed its charging document, the quote, unquote, statement of claim, which is a functional equivalent of a federal complaint, we're still talking about allocations as opposed to apportionment of any sum certain obligation. So back to the question of, yes, loss is a defined term in the agreement, but the agreement doesn't say you can draw on the letter of credit in the event of a loss. It says you can be indemnified pursuant to the agreement. Exactly. And the agreement says indemnification in the case of a loss as is defined by the agreement. I'm still struggling. And the critical term there is indemnification. Isn't the critical term pursuant to the agreement? Aren't those the critical terms? I think we have to read all terms in harmony to give each term effect. And the critical issue here we respectfully submit is that the term indemnification is being denuded entirely of its meaning and inappropriately read out of Section 2.2, 3.2, and the certification condition. If you say a loss, however broadly defined, in and of itself will be called to draw on the letter of credit. Well, counsel, I want to ask you a question about the terms we've been talking about, loss and indemnification. You've answered several times questions about loss, and I'm still not clear. Are you conceding that there was a loss? Are you saying that there was no loss? We're not disputing that there was a loss because of the breadth of the definition. The term loss includes a claim or demand or cause of action. But the additional inquiry that is necessary, frankly, to attribute a non-absurd meaning to the contractual terms, is when is a person in a position to request indemnity and when is an indemnitor in a position to actually extend indemnification when you're only talking about a claim or demand in the abstract? Well, that's what the letter of credit says, though. It says that Devon, Canada, first provide written notice to EFLO claiming indemnification. Claiming. The additional consideration I think is important there, Your Honor, is that it requires a request for indemnification pursuant to 2.2 of the closing agreement. And the closing agreement talks about entitlement to indemnity pursuant to the terms of the closing agreement. Devon, Canada, through Devon Energy, was not entitled to indemnity unless the factual circumstances were such that there was a basis to claim indemnity. Let me just ask on indemnity. To the extent that there's a need to get guidance on how the term indemnity should be interpreted is used in these agreements. The agreements talk about Alberta law as the choice of law provision. There isn't much in the way of cases or authority from Canada in either side's briefs. There's a little bit, but not all that much help. So what's your best Alberta case on the meaning of indemnity? Your Honor, I think that, and I make this nuanced observation because I think the provision talks about Alberta or the laws of Canada. So if I'm not about to cite- Well, that's fine. But the briefs cite Oklahoma more than they cite Canada. So we can go to Canada, but I'd still like to know what we're supposed to be looking at. Certainly, Your Honor. I think probably one of the most helpful citations that we include is on page 4, amongst others, but this is what I think is particularly helpful of the reply brief where we cite Ontario Limited versus Nordic Insurance. This is the reply brief? Yes, sir. And in that case, the Canadian court goes to Merriam-Webster's in the commonly accepted, and I think correct, definition of indemnity and talks about indemnity in terms of, quote, exemption from incurred penalties or liabilities. And that's the critical distinction here. Devin Canada did not incur any penalties or liabilities. And what I think is particularly noteworthy in that regard is, to Devin Energy's credit, they concede that point. Well, did they incur a loss? You could say they incurred a loss, but there was no the nuance issue is there was no financial, fixed, quantifiable, some, certain associated with it. And so you're not incurring a penalty or a liability if it's only an abstract, prospective obligation. So what do you make of the district court's reliance on Section 3.2 of the closing agreement that refers to indemnity for loss that Devin Canada, in the words are, may suffer? I think that's significant because no one made the argument, Devin Energy did not, we certainly did not, in the lower court that you should read the indemnity provision in the purchase agreement any different than the manner that the indemnity agreement in the closing agreement is read. What the court, in essence, did was to recognize the conventional operation of indemnity in context of the purchase agreement, because it didn't contain the term may. But because the term may appears in the closing agreement, the lower court converted, contrary to the legal operation of an indemnity, converted it into a prospective, forward-looking obligation. That, in my humble opinion, actually highlights the difference between an indemnity and the key role that it plays in this matter relative to certain other forms of duty. Like, for instance, a duty to defend, which is prospective, is commonly understood to be prospective. This court's jurisprudence reflects that it is prospective. But there's no context in which the duty to indemnify is viewed as a prospective undertaking. Case authority, particularly where these two duties arise most commonly, in the insurance context, in addition to the definitional meaning of indemnity, all reinforce that if that term is going to have any effect, it is referring to saving someone from a fixed, quantifiable liability, not some prospective. So this is your duty to defend versus duty to indemnify argument? It is. I think that the duty to defend issue sharpens the understanding of what the duty to indemnify is. Wasn't that issue raised before the district court, this argument regarding duty to defend? It was not, Your Honor, because no one differentiated between the language in the closing agreement versus the purchase agreement. So Devin Energy didn't argue that the language in the closing agreement that has the may phrase should be treated more favorably than the purchase agreement. The lower court, for the first time, introduced that issue sua sponte in his ruling. And so in a de novo review context, where we're looking at both the language of the contract anew as well as the reasoning of the lower court, I respectfully submit you cannot waive an issue that the lower court, for the first time, introduces in its ruling. And I see my time has expired. Thank you. May it please the court, Spencer Smith and my co-counsel, Tim Baumhoff, on behalf of Devin Energy Corporation. The appellants ignore the clear and unambiguous language of the agreements that EFLOW entered into. Devin's draw on the letter of credit was proper and consistent with the terms of the letter of credit, the sales agreement, and the closing agreement. In those agreements, EFLOW agreed to indemnify Devin Canada for losses it incurred related to assets EFLOW purchased from Devin Canada. Appellants agree that incur means subject to. And I just heard appellants agree that a claim or demand is a loss. Therefore, if Devin Canada was subject to a claim or demand related to the assets that were purchased, a loss was sustained, and is it a hypothetical loss? There has not been a some certain established. What has occurred is Paramount Resources, who took over from EFLOW, when EFLOW claimed insolvency as the operator and the largest, along with its affiliates, working interest owner of these assets, was ordered the by the Yukon government to remediate these environmental issues. So essentially what has occurred, and it's tied to 3.1 of the closing agreement, in that section, EFLOW not only has an obligation to indemnify Devin Canada from and against any and all losses suffered related to abandonment and reclamation obligations, but it also was a timely performance of all abandonment and reclamation obligations. I think the word that causes me some pause is losses suffered. So on May 18, 2018, that was the date Devin Energy's notice of indemnity letter. What losses had Devin Canada suffered or incurred that would trigger indemnity? And I think we've got four different types of words that are used, one of which is suffered, one of which is incurred. All right, suffered or incurred. What are the losses as of that date? What do we know that they are? Incurred by definition is to be subject to. Well, that's one definition. Well, let me put it this way. Was there any basis for Devin Energy to draw the full force of the loss? I mean, it's 4.38 million from the line of credit, and there's no number. And all of a sudden, they can just waltz in and take 4.38 million. So where is the loss suffered that would entitle them to do that? Yeah. And if you look at the demand from Paramount, they identify $13 million Canadian that they've already paid that should have been paid by EFLOW. All that the Paramount letter does is it says the $13 million. It says that they're going to be obligated to help with that. But then the letter asks for a meeting. That's pretty much all that was specifically demanded was a meeting. Why would that trigger the indemnity? It triggers the indemnity because of the language in the agreements Where's the loss stated in the letter? UOSX. Yeah, and it's a demand. Okay, a demand for how much? Well, there's not a sum certain that's allocated. Why isn't that a problem? Well, from our perspective, if you look at the terms of the agreement, there's no requirement that a demand incurred identify a sum certain. And here we've got a situation. Doesn't it seem a little strange when you don't have a number and you can walk in the bank and walk out with $4.38 million? Here we've got a situation where you've got an environmental assessment that is being handled in the Yukon territory. It's anticipated that it's going to be well in excess of the $13 million that Paramount incurred back in 2018. And you've also got a situation where you have an insolvent entity, EFLOW, who is obligated to So if there's any potential issue with that, it's anything that ultimately gets attributed to Devon Canada from an allocation standpoint. When that matter is subsequently concluded and it's still ongoing, there will be no ability by EFLOW to cover that identification obligation. And currently, the funds sit in an account held by Devon Canada. They haven't been touched. And ultimately, when the matter gets resolved, they will be expended as Devon Canada sees fit to do. And what is that matter to be resolved? The resolution of the cost of remediation? And as I understand the current status of it, an environmental assessment was recently completed. And it's really hard to conduct it because where it's at in the Yukon, they've got a limited window when they can do this. And so now an environmental assessment has been completed. It's confidential at this point, but it's, as I understand it, anticipated that that litigation is going to ramp back up. That's been the delay. Could you clarify one thing that was mentioned in the briefs? I'm not sure it was in your brief. I think it was in the appellant's. But there's a reference to an entity called CNRL assuming financial responsibility for the remediation. I was not clear on the point there. Can you help us out? And so I think what the appellants are arguing is that because CNRL also owes obligations to Devon Canada related to the environmental issues in the territory pursuant to an indemnification agreement, that therefore their indemnification obligation goes away. And our position is that's just wrong. You can have opportunities to be indemnified for more than one party. And the fact that one party can indemnify you doesn't eliminate the other indemnification obligation. Otherwise, both parties would argue their indemnification obligations are null and void. We're talking about claims and demands here, but did you have anything more than that by the time you actually... Yes, we did. Didn't you have an actual cause of action at that point? Correct. So shortly after... Does that make any difference? We think it's another loss. Shortly after the demand from Paramount was sent, Paramount filed suit against, among others, Devon Canada and EASLO. Devon Canada didn't get served with that lawsuit until almost a year later on June 3rd, which is further evidence that following Devon Canada's claim for indemnification and within that claim, a demand on EASLO to fulfill their obligations that they have pursuant to the agreements to participate in the remediation effort, Devon Canada got served with it. And so shortly after that... In 2018, only talked about a claim and demand. There was never a notice. I think there were some emails, but there was never a notice that talked about anything beyond the claims and demand. Correct. There was only the one claim for indemnification based on the claim or demand, which was still in place at the time the Paramount lawsuit was served. Why should we give the meaning of the word incurred, which seems to be what you're pinning all your arguments on? Why should we give it the meaning subject to when it comes in a list of words? All losses, you can indemnify the vendor from and against all losses, suffered, sustained, paid, or incurred. The three verbs that preceded are all pretty definitive and would seem to require some actual amount of loss suffered. You have liability. You have actual liability. Why wouldn't we read it to mean the same thing? I think it's because you have to look at the meaning of that word, incur, as agreed to by EFLOW, includes being subject to. It has a specific meaning. You had two sophisticated parties negotiating this contract. If they wanted to eliminate a word like incur, they could have eliminated it and maintained that it was something either suffered or sustained. You have to give meaning to the word that was included in this arm's-length negotiation. Can I just ask you a question similar to one I asked to Mr. Nutt, and that is governing law. I don't know if this is implicit or not, but it seems like the parties cite Oklahoma and Canada law together. Is there some agreement that the law of Canada and Oklahoma is exactly the same? No, there's been no such agreement. There is some Canadian case law cited that I think is helpful to the interpretation of the agreement. One of which is Ventus 850 OR 3254 paragraph 24 under Canadian law. The cardinal presumption is that the parties to a contract intended what they said, which is similar to Oklahoma's construction of contracts. Another Canadian case that is cited in the briefs provides that a practical common sense approach, not dominated by technical rules of construction, should be employed. That's what we are urging the court to do. We are looking at the terms of the contract. We maintain that a loss was incurred. There's no dispute that notice of the claim was given, and there's no dispute that more than 30 days elapsed following the notice of the claim before the draw was requested. Those are the only conditions required to draw down on the letter of credit, and those conditions were met. To return to what we've probably talked about too much, the definition of losses, is that limited by the paragraph that tells us 3.1 about abandonment and reclamation? I don't believe so, Your Honor. It says, any and all losses suffered, sustained, paid, or incurred. That seems to tighten up the definition of losses. To get back to what your opposing counsel is saying, you've got to have a bill in hand. Tell us what you want us to pay. If you look at 3.2, which is the other provision you discussed with counsel earlier, it includes environmental liabilities. The definition of environmental liabilities includes, among other things, abandonment and reclamation obligations. 3.2 is the provision that contains may. Right, but it's still suffer, sustain, pay, or incur. Correct. This is narrower than to make a claim. It is still the same definition of loss, which includes claims and demands, whether it's in 3.1 or 3.2 or 6.1 of the sales agreement. Isn't indemnity, though, usually a matter of paying when a payment has been made? I would agree that's the typical scenario. Here we have an arm's length transaction where it was negotiated pursuant to which a claim for indemnity could be made if a loss was sustained or incurred, which happened. Thank you, counsel. You're both very excellent orators. Thank you.